**LUDLOW CORPORATION, Petitioner,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent,**

**Boston Stock Exchange, Intervenor.**

**No. 77–1417.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 12, 1978.

Decided Aug. 9, 1979.

As Amended Aug. 10, 1979.

George B. Reid, Jr., Washington, D. C., with whom W. Crosby Roper, Jr., Bate C. Toms, III, and Cyril V. Smith, Jr., Washington, D. C., were on brief, for petitioner.

Robert C. Pozen, Asst. Gen. Counsel, Washington, D. C., with whom Harvey L. Pitt, Gen. Counsel, Paul Gonson, Alan Rosenblat and Vernon I. Zvoleff, Associate Gen. Counsel, Securities and Exchange Commission, Washington, D. C., were on brief, for respondent.

Arthur D. Mason, Ira H. Polon, and Roslyn A. Mazer, Washington, D. C., were on brief, for intervenor.

Before BAZELON, Senior Circuit Judge, and McGOWAN and ROBINSON, Circuit Judges.

Opinion for the Court filed by McGOWAN, Circuit Judge.

McGOWAN, Circuit Judge:

This is a petition for review of a Securities and Exchange Commission order approving the application of the Boston Stock Exchange (BSE) for unlisted trading privileges in petitioner's common stock. The Commission held, based on facts developed in a hearing before an Administrative Law Judge (ALJ), that approval of the application would be "consistent with the maintenance of fair and orderly markets and the protection of investors." Section 12(f)(2) of the Securities Exchange Act of 1934, *as amended* (the Act), 15 U.S.C. § 78*l*(f)(2) (1976). We affirm.

## I

The facts, as found by the ALJ, are not disputed. Ludlow is a diversified manufacturer of home furnishings, manufactured housing, and papers and packaging. It is incorporated and has its principal offices in Massachusetts; approximately 40% of its shareholders, holding about one-third of its outstanding shares, live in New England. Ludlow's common stock is listed on the New York Stock Exchange (NYSE), where in 1974 it ranked 912th out of 1,543 stocks in trading volume.[1] The shares are neither listed nor traded on any other national securities exchange.

BSE is a securities exchange registered with the Commission pursuant to section 6 of the Act, 15 U.S.C. § 78f (1976). BSE offers trading in both listed and unlisted securities. Unlisted securities comprised approximately 85% of the tradeable issues and 90% of the shares traded on the BSE; trading in these issues contributed 32% of BSE's total operating revenue in 1974, and a somewhat larger percentage in 1975. BSE uses the services of specialists who are obligated to make a market in securities assigned to them. Approximately half of the unlisted issues have assigned specialists. The BSE president testified before the ALJ that he was unable to predict whether a specialist would be provided for Ludlow.

BSE applied to the Commission for unlisted trading privileges in Ludlow common stock on April 23, 1974.[2] Ludlow objected to the application and obtained a public hearing thereon. On May 6, 1976, the ALJ entered an initial decision granting BSE's application. The Commission affirmed the ALJ and granted the application on March 11, 1977, and Ludlow petitioned this court for review.

## II

We hold, as a threshold matter, that Ludlow is properly before this court under section 25(a)(1) of the Act, 15 U.S.C. § 78y(a)(1) (1976),[3] notwithstanding several jurisdictional arguments advanced by the Commission.

### A.

■ We find first that Ludlow has standing to seek review of the Commission's section 12(f)(2) order.

Ludlow established its "injury in fact," as required by Article III of the Constitution, by alleging an interest in maintaining access to the nation's equity capital markets. The possibility that unlisted trading on the BSE might destabilize trading in Ludlow shares on either the NYSE or the BSE, leading to impairment of Ludlow's ability to raise capital, is not so speculative as to render the case nonjusticiable.[4]

---

1. Securities are "listed" on an exchange by virtue of a listing agreement between the issuer and the exchange. To obtain a listing of its shares, the issuer generally must meet the exchange's listing criteria, file a listing application, pay certain fees, and undertake to comply with standards prescribed by the exchange to govern activities of listed issuers. *See* S.Rep. No.75, 94th Cong., 1st Sess. 18 (1975), U.S. Code Cong. & Admin.News 1975, p. 179.

2. BSE's application was pursuant to § 12(f)(1) of the Act, 15 U.S.C. § 78*l*(f)(1) (1976), which provides, in pertinent part, that
   any national securities exchange, subject to the terms and conditions hereinafter set forth . . . upon application to and approval of such application by the Commission, may extend unlisted trading privileges to any security listed and registered on any other national securities exchange . . . . .
   The standards to be applied by the Commission in acting on unlisted trading privilege ap-

plications are contained in section 12(f)(2) of the Act, 15 U.S.C. § 78*l*(f)(2) (1976), which provides, in pertinent part:
   (2) No application pursuant to this subsection shall be approved unless the Commission finds, after notice and opportunity for hearing, that the extension of unlisted trading privileges pursuant to such application is consistent with the maintenance of fair and orderly markets and the protection of investors.

3. Section 25(a)(1) provides, in pertinent part, that a "person aggrieved by a final order of the Commission entered pursuant to this title may obtain review of the order in the United States Court of Appeals . . . ."

4. *Compare Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 42–43, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Seldin*, 422 U.S. 490, 508–09, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) and *Linda R. S. v. Richard*

The Commission argues, nevertheless, that Ludlow lacks standing because it is not within the "zone of interests" protected by section 12(f)(2).[5] The Commission correctly points out that section 12(f)(2) does not explicitly mention that the issuer is entitled to judicial review. *See* note 2 *supra.* We do not believe that this excludes issuers from the zone of interests of section 12(f)(2).[6] We find it significant that under section 12(f)(5), 15 U.S.C. § 78*l*(f)(5) (1976), the issuer must be given notice of, and an opportunity to be heard on, a section 12(f)(2) application.[7] Section 12(f)(5) explicitly recognizes that "the issuer . . . ha[s] a bona fide interest" in the decision to grant unlisted trading privileges. This provision recognizes that unlisted trading might destabilize the market, *see also* S.Rep.No.75, 94th Cong., 1st Sess. 18–19 (1975), and that this would harm the issuer. Ludlow therefore falls within the "zone of interests" protected by section 12(f)(2).

### B.

We find also that Ludlow has exhausted its requisite administrative remedies and that its claim is ripe for judicial review.

Under these general headings, the Commission makes alternative, but related, assertions: first, that Congress specifically forbade review of a section 12(f)(2) order; and, second, that as a matter of discretion we should decline review at this time.

Each argument depends heavily on the existence of section 12(f)(4) of the Act, 15 U.S.C. § 78*l*(f)(4) (1976),[8] which provides a procedure for petitioning the Commission to suspend or terminate unlisted trading in a security after the Commission in a 12(f)(2) proceeding has authorized such trading. The issuer of a security (among others) is explicitly granted the right to petition for such review. Judicial review exists, we are told, only when the Commission denies a 12(f)(4) petition; the decision initially to authorize unlisted trading under section 12(f)(2) is said to be an interim, nonfinal, order.

■ We disagree. The granting of a section 12(f)(2) application does not become a provisional or tentative agency action merely because a *related* inquiry may occur in a section 12(f)(4) proceeding once unlisted

---

*D.,* 410 U.S. 614, 617–18, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) *with United States v. SCRAP,* 412 U.S. 669, 687–89, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) and *NRDC v. SEC,* 196 U.S.App.D.C. —— at ————, 606 F.2d 1031 at 1042–1043 (1979).

5. *See Association of Data Processing Serv. Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Unlike the "injury in fact" requirement, which is constitutional in dimension, the "zone of interests" test is a nonconstitutional prudential limitation on our jurisdiction. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 1608 & n.6, 60 L.Ed.2d 66 (1979).

6. *Cf. Gladstone, Realtors v. Village of Bellwood,* 99 S.Ct. at 1608–13 (comparing §§ 810 and 812 of the Fair Housing Act).

7. Section 12(f)(5) provides:

(5) In any proceeding under this subsection in which appropriate notice and opportunity for hearing are required, notice of not less than ten days to the applicant in such proceeding, to the issuer of the security involved, to the exchange which is seeking to continue or extend or has continued or extended unlisted trading privileges for such

security, and to the exchange, if any, on which such security is listed and registered, shall be deemed adequate notice, and any broker or dealer who makes or creates a market for such security, and any other person having a bona fide interest in such proceeding, shall upon application be entitled to be heard.

8. Section 12(f)(4) provides:

(4) On the application of the issuer of any security for which unlisted trading privileges on any exchange have been continued or extended pursuant to this subsection, or of any broker or dealer who makes or creates a market for such security, or of any other person having a bona fide interest in the question of termination or suspension of such unlisted trading privileges, or on its own motion, the Commission shall by order terminate, or suspend for a period not exceeding twelve months, such unlisted trading privileges for such security if the Commission finds, after appropriate notice and opportunity for hearing, that such termination or suspension is necessary or appropriate in the public interest or for the protection of investors.

trading begins. A 12(f)(2) proceeding is independent of a 12(f)(4) proceeding because a different inquiry is made in each. In the 12(f)(2) hearing, the burden of proof is on the applicant for unlisted trading privileges to show that such privileges are "*consistent with the maintenance of fair and orderly markets* and the protection of investors*" (emphasis added). In a 12(f)(4) proceeding, on the other hand, the person objecting to unlisted trading has the burden of proving that terminating or suspending unlisted trading is "*necessary or appropriate in the public interest* or for the protection of investors" (emphasis added).

The differences in the inquiry to be undertaken and the allocation of the burden of proof make it clear that judicial review of a section 12(f)(4) order is not the proper mechanism for determining whether the standards of section 12(f)(2) were properly applied when unlisted trading was initially authorized.

Congress, had it wished, could have permitted the issuer to intervene in the Commission's 12(f)(2) hearing and at the same time withheld the opportunity for judicial review of that decision. There is, however, nothing on the face of the statute that suggests this. The legislative history of section 12(f)(2) does indicate that Congress did not want an issuer to have exclusive power to control which markets may trade the issuer's stock. *See* S.Rep.No.75, 94th Cong., 1st Sess. 19 (1975). This does not mean, however, that an issuer is to have no role in the 12(f)(2) decision,[9] or that it is not free to appeal from an adverse Commission decision.

The order from which review is sought here was made after a formal hearing, an initial decision by an ALJ, and an appeal to the full Commission. The decision permitted unlisted trading in Ludlow shares to begin.

We hold for all the reasons stated above that the 12(f)(2) decision is a final order subject to review here under section 25(a)(1) of the Act, 15 U.S.C. § 78y(a)(1) (1976).[10]

The Commission argues nevertheless that, as a matter of discretion, we should decline to review at this time its decision to grant unlisted trading privileges. Declining review is appropriate, we are told, because Ludlow is free to file a 12(f)(4) petition to suspend or terminate unlisted trading. The 12(f)(4) inquiry is preferable, according to the Commission, because at that time the record will reflect what actually has happened to the markets for Ludlow stock since unlisted trading began.

In light of the foregoing discussion, this argument must fail. We have held above that a 12(f)(2) order is a final order from which a party may seek judicial review. Section 25(a)(1) of the Act, 15 U.S.C. § 78y(a)(1) (1976). *See* note 3 *supra*. To deny judicial review of the 12(f)(2) order, whether because of an alleged congressional prohibition or by reason of a discretion attributed to this court, equally deprives Ludlow of the opportunity to ensure that the Commission adhered to the standard and burden of proof peculiar to section 12(f)(2). The court does not have discretion to decline judicial review of an order under these circumstances. We therefore turn to the merits of Ludlow's petition.

### III

The standard contained in section 12(f)(2) directs the Commission are to grant the application unless it finds the extension of unlisted trading privileges to be "consistent with the maintenance of fair and orderly markets and the protection of investors." Congress adopted this standard in the Securities Acts Amendments of 1975 (1975 Amendments), Pub.L. 94–29, § 8, 89 Stat. 97, 117–18. This language replaced the standard that had been in effect since 1964, under which the Commission was required to find that extending unlisted trading privileges would be "necessary or appropriate in the public interest or for the protec-

---

9. *See* § 12(f)(5) of the Act, 15 U.S.C. § 78*l* (f)(5) (1976), *supra* note 7.

10. *See* note 3 *supra*.

tion of investors." Securities Acts Amendments of 1964, Pub.L.No.88–467, § 3, 78 Stat. 565, 565–66. Thus, Congress retained the "protection of investors" requirement but substituted "fair and orderly markets" for the "public interest" standard. Although the meaning of this change is not obvious on its face, we take it to be that henceforth unlisted trading applications are to be evaluated, at least insofar as their effect on the securities markets is concerned, with primary reference to the congressional purposes of the 1975 Amendments.

In those Amendments, Congress directed the Commission to "facilitate the establishment of a national market system for securities." [11] Congress eschewed specifying the details of the national market. It instead granted the Commission broad discretion to shape the system.[12] Congress intended that the national market system use modern communication and data processing equipment to ensure that

> (i) information is equally available, and securities transactions may be completed equally cheaply and easily, anywhere in the nation, and (ii) "fair competition" may exist between all investors, brokers, dealers, and securities markets, no matter where they are located.[13]

The granting of unlisted trading privileges is highly relevant to the objectives of a national market system. Without unlisted trading, trading occurs only on (1) an exchange that lists the security pursuant to an agreement with the issuer, or (2) over-the-counter. Unlisted trading therefore is an indispensable part of Congress' plan that securities markets compete with one another.[14] At present, the smaller exchanges earn much revenue from unlisted trading.

Exchanges like the BSE must be able to trade securities on an unlisted basis to compete with the NYSE and, indeed, to survive.

The petitioner here recognizes that the 1975 Amendments demonstrate that Congress in general favored competition among exchanges fostered by unlisted trading. Petitioner argues, however, that the standard provided by the Amendments—that unlisted trading be allowed only where it is "consistent with the maintenance of fair and orderly markets and the protection of investors"—in this case requires reversal of the Commission's decision to permit unlisted trading of Ludlow stock on the BSE.

## IV

■ This court must accept the Commission's factual determinations if they are supported by substantial evidence. Section 25(a)(4) of the Act, 15 U.S.C. § 78y(a)(4) (1976). The Commission insists, however, that its decision to permit unlisted trading in Ludlow stock was based in part on a quasi-legislative prediction that such trading would help fulfill Congress' policy in enacting the 1975 Amendments. To the extent that the decision was of this sort, the Commission argues that we may reverse only if petitioner meets what the Commission believes to be the higher standard of showing that its decision was arbitrary or capricious. In support of this theory, the Commission cites our own decision in *Bradford National Clearing Corp. v. SEC*, 191 U.S.App.D.C. 383, 390–91, 590 F.2d 1085, 1092–93 (1978). The Commission's reliance on *Bradford* is misplaced. *Bradford* involved judicial review of a process "distinctly legislative in nature," akin to rulemaking. *Id.* at 391, 590 F.2d at 1093. *Bradford*

---

**11.** 1975 Amendments, Pub.L.No.94–29, § 7, 89 Stat. 97, 111–12 (adding § 11A to the Act, 15 U.S.C. § 78k–1 (1976)). A second major objective of the 1975 Amendments, not directly relevant to the present case, was to encourage the establishment of a national system for the clearance and settlement of securities transactions. *See generally Bradford Nat'l Clearing Corp. v. SEC*, 191 U.S.App.D.C. 383, 590 F.2d 1085 (1978).

**12.** *See Bradford Nat'l Clearing Corp. v. SEC*, 191 U.S.App.D.C. at 393 & n.10, 590 F.2d at 1095 & n.10; S.Rep.No.75, 94th Cong., 1st Sess. 7, 55, 58, 126 (1975).

**13.** *Bradford Nat'l Clearing Corp. v. SEC*, 191 U.S.App.D.C. at 392, 590 F.2d at 1094.

**14.** *See* S.Rep.No.75, 94th Cong., 1st Sess. 8, 18–20 (1975); H.R.Rep.No.123, 94th Cong., 1st Sess. 90–91 (1975).

therefore applied the "arbitrary or capricious" standard of judicial review to these quasi-legislative decisions. This case, on the other hand, involves a trial-type adjudication of BSE's application for unlisted trading privileges. Review is sought here from an order that occurred after a formal hearing, an initial decision by an ALJ, and an appeal to the full Commission. Adjudications of this sort must be reviewed under the substantial evidence test. Section 25(a)(4) of the Act, 15 U.S.C. § 78y(a)(4) (1976).

In any event, this case does not turn on subtle differences in the various standards of review, because we find that substantial evidence supports the Commission's decision.

## V

■ The Commission approved BSE's application for unlisted trading in Ludlow stock after finding that the extension of such privileges was "consistent with the maintenance of fair and orderly markets and the protection of investors." Section 12(f)(2) of the Act, 15 U.S.C. § 78l(f)(2) (1976). We examine each part of this test in turn.

### A.

Petitioner asserts that the Commission must be reversed because BSE did not establish that there would be fair and orderly markets for Ludlow stock once unlisted trading privileges were granted. Petitioner correctly points out that BSE did not commit itself to having a specialist make a market for Ludlow stock. Petitioner also points out that few traders deal on the BSE in stocks which have no specialist. Petitioner therefore concludes that BSE has failed to show that there will be a "fair and orderly" market because it has not shown that there will be any market at all.

This argument misstates the burden that BSE must surmount. Under the 1975 Amendments, an applicant for unlisted trading privileges need not show that there *will be* fair and orderly markets. The applicant must show only that the unlisted

trading privileges are *"consistent with"* fair and orderly markets. The difference is crucial. With respect to trading on the secondary exchange, BSE must show that *if* trading should develop, it will be fair and orderly.

The record supports the Commission's conclusion that an unlisted trading privilege in Ludlow stock is consistent with maintaining a fair and orderly market, even if no specialist is provided. BSE has had much experience in unlisted trading. Approximately 85% of BSE's recent volume was in unlisted stocks. Only about half of the stocks for which BSE has unlisted trading privileges are assigned to specialists. It is true that a very high percentage of the BSE's volume is in stocks assigned to a specialist. But it does not follow from this that trading without a specialist is not fair and orderly.

Traders on the BSE have access to an electronic system that reveals the latest NYSE quotations. Trades necessarily occur at prices within the range of NYSE transactions because each party is free to purchase or sell on the NYSE if unsatisfied with a proposed price on the BSE. Moreover, where no specialist is involved, tentative BSE trades must be approved by a floor official.

Petitioner makes much of past Commission decisions that have required an applicant for unlisted trading privileges to show that an *active* market would be established on the new exchange. *See* Baltimore Stock Exchange, 12 S.E.C. 516, 518–19 (1942); Cincinnati Stock Exchange, 6 S.E.C. 661, 663 (1940); New York Curb Exchange, 3 S.E.C. 81, 85 (1938).

These authorities are not persuasive. Even the most recent antedates by more than 30 years the 1975 Amendments in which Congress found unlisted trading to be an essential element of the national securities market system. These Commission decisions also occurred in an age that lacked the modern technology that helps ensure fair and orderly trading on secondary markets. The Commission was not bound to

follow cases decided under both a different statute and a fundamentally different regulatory philosophy.

Substantial evidence also indicates that the primary market for Ludlow stock, the NYSE, will remain fair and orderly after BSE obtains unlisted trading privileges. Petitioner's own expert witness conceded that he did not think that the NYSE market for Ludlow stock would be disrupted if the BSE acquired unlisted trading privileges. Moreover, petitioner's expert was not able to cite a single instance in which the NYSE market had been disrupted after another exchange obtained unlisting trading privileges.

## B.

The second part of the section 12(f)(2) test requires BSE to show that unlisted trading privileges are consistent with investor protection. The Commission found that BSE had made this showing.

Petitioner asserts that the Commission erred because prearranged block trades of Ludlow stock on the BSE might displace the execution of public "limit orders" filed in the NYSE specialist's book. The record, however, shows that there were few, if any, institutional holders of Ludlow stock, so block trades are unlikely. Moreover, certain features of the national market system, such as a composite quote reporter and a central limit order file, are due to come into use. These features will ensure that any block trades that do occur will not displace limit orders on other exchanges.

The Commission's finding that unlisted trading in Ludlow stock on the BSE is "consistent with the maintenance of fair and orderly markets and the protection of investors" is supported by substantial evidence. Its decision is therefore affirmed.

*It is so ordered.*